IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL F. BOHN AND BRIDGET B. BOHN,
on behalf of themselves and all others similarly
situated,

                      Plaintiffs,

vs.

ZURN PEX, INC and ZURN INDUSTRIES, LLC,
formerly known as ZURN INDUSTRIES, INC.

Court File No:_____

(JURY TRIAL DEMANDED)

_____/

MCALPINE & ASSOCIATES
Mark L. McAlpine  (P35583)
*Attorney of Record*
Marcus R. Sanborn (69565)
3201 University Drive
Auburn Hills, MI  48326
(248)  373-3700

LARSON · KING, LLP
Shawn M. Raiter
T. Joseph Snodgrass
2800 Wells Fargo Place
30 East 7th Street
St. Paul, MN 55101
(651)312-6500

*Attorneys for Plaintiffs and*
*The Putative Class*

_____/

## CLASS ACTION COMPLAINT

Plaintiffs Paul F. Bohn and Bridget B. Bohn, on behalf of themselves and all others

similarly situated, by and through their undersigned counsel, bring this Complaint in class action

and state and allege as follows:

**THE PLAINTIFFS**

1.      Plaintiffs and putative class representatives Paul F. Bohn and Bridget B. Bohn are husband and wife and are residents of and the owners of property in Hanburg Township, Michigan.

2.      Plaintiffs and putative class representatives bring this case on behalf of themselves and a class of similarly situated persons and entities in the State of Michigan.

**THE DEFENDANTS**

3.      Defendant Zurn Pex, Inc. is a privately-held foreign entity that is in the business, among other things, of advertising, warranting, manufacturing, selling and servicing plumbing components.

4.      On information and belief, Zurn Pex, Inc. has its principal place of business in Texas.

5.      Zurn Pex, Inc. is responsible for some or all of the acts and omissions alleged herein.

6.      Defendant Zurn Industries, LLC is a privately-held foreign entity that is in the business, among other things, of advertising, warranting, manufacturing, selling and servicing plumbing components. Zurn Industries, LLC is the successor entity to Zurn Industries, Inc.

7.      On information and belief, Zurn Industries, LLC has its principle place of business in Pennsylvania.

8.      Zurn Industries, LLC is responsible for some or all of the acts and omissions alleged herein.

9.      Zurn Pex, Inc. and Zurn Industries, LLC have acted in concert with each other with the respect to the actions and omissions alleged herein.

10.    At various times in marketing and advertising, in addressing quality control issues, warranty issues, manufacturing issues and legal issues associated with the subject matter of this Complaint, Defendants have used literature and correspondence that reference "Zurn Pex, Inc.", "Zurn Industries, Inc.", "Zurn Plumbing Products Group", "Qest, Inc. a division of Zurn Industries, Inc." and "Zurn Industries, Inc. Qest Operations."

11.    The products at issue are advertised at websites with URL addresses www.Zurn.com and www.zurnpex.com.

12.    "Qest, Inc." and "Qest Operations" are not separate legal entities but were merely trade names used by Defendants.

13.    "Zurn Plumbing Products Group" is not a separate legal entity.  Rather, "Zurn Plumbing Products Group" is a trade name used by Zurn Industries, LLC and Zurn Pex, Inc.

14.    Zurn Pex, Inc. and Zurn Industries, LLC are jointly and/or severally liable to Plaintiffs and the putative class members as joint venturers, or in the alternative, operate such that any pretend corporate formalities amongst and between the two should be disregarded or pierced, or in the alternative, are subject to an agency relationship, or in the alternative, are subject to predecessor and successor liability theories, or in the alternative, are otherwise jointly and severally liable for all acts and omissions alleged herein.

15.    Throughout the remainder of this Complaint, Zurn Pex, Inc. and Zurn Industries, LLC and their respective predecessors will be collectively referred to as "Zurn."

## JURISDICTION AND VENUE

16.    This Court has jurisdiction over the parties, the putative class, and the causes of action asserted herein pursuant to Rule 23 of the Federal Rules of Civil Procedure.

17.     Venue in this forum is proper in that the putative class representatives reside in Michigan, the putative class members reside in Michigan, the causes of action for the class representatives arose, in part, in Michigan, the causes of action for putative class members arose, in part, in Michigan, and Zurn transacts business within Michigan.

18.     Upon information and belief, there are at least twelve other class actions pending concerning the subject matter of this Complaint.

## SUMMARY OF CLASS ACTION

19.     Plaintiffs on behalf of themselves and all other persons similarly situated bring this action for and on behalf of the owners of homes and buildings with Zurn plumbing systems with cross-linked polyethylene ("Pex") tubing.  These systems are defective.

20.     Plaintiffs and the putative class members have been damaged as a result of the design, development, advertisement, marketing, sale and warranty misconduct of Zurn in connection with Zurn Pex plumbing systems installed with Zurn's brass insert fittings.

21.     Zurn has used different names for its brass insert fittings since 1997, including referring to them as "QestPEX Crimp System," "Qicksert fittings," and "Qick/Sert insert fittings" (hereinafter referred to as "brass insert fittings").

22.     Zurn has sold brass insert fittings for its Pex plumbing systems in Michigan and in each of the United States.

23.     Zurn warrants and advertises that its brass insert fittings provide "a worry free" plumbing system.

24.     Zurn warrants and advertises that, with its brass insert fittings, "you can rest assured that your new plumbing . . . system will provide a lifetime of reliable service."

25.     Zurn warrants and advertises its brass insert fittings as having a 25-year warranty that expressly covers consequential damages arising from leaks or failures in the plumbing system.

26.     Zurn's brass insert fittings, however, are defectively designed and manufactured and have prematurely failed to the point of leaking – sometimes only weeks after being put into service.

27.     Testing has shown that Zurn's brass insert fittings have cracks and manufacturing defects that are present before the fittings are even put into service.

28.     The failures of the Zurn brass insert fittings have and will in the future cause water leaks.  These leaks have and will in turn cause extensive damage to other property including the homes and personal property of the owners.

29.     The foregoing types of damages arising from Zurn's defective brass insert fittings are reasonably foreseeable at the time of design and manufacture of the brass insert fittings.

30.     The foregoing types of damages are reasonably foreseeable at the time of sale of the brass insert fittings.

31.     Thousands of Zurn's brass insert fittings have prematurely to the point of leaking, some within only weeks of installation.

32.     The foregoing brass fitting failures have included premature failures in the State of Michigan.

33.     After convincing consumers to purchase the Zurn brass insert fittings based in part on the 25-year warranty, Zurn now refuses to honor the warranty because the failures are allegedly not "covered in [Zurn's] cost structure."

34.     Plaintiffs and the putative class members seek damages arising from and proximately caused by Zurn's breach of consumer protection statutes, fraud and misrepresentations, negligence, breach of contract and breach of warranties. Plaintiffs and the putative class members also seek declaratory and injunctive relief, as described below.

## DEFINITION OF PROPOSED CLASSES

35.     Plaintiffs bring this class action on behalf of themselves and all others similarly situated, for all claims alleged herein, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The first proposed class is defined as:

> All persons and entities that own a structure located within the State of Michigan that contains a Zurn Pex plumbing system with brass insert fittings. The proposed class includes, without limitation, all such persons or entities who contacted Zurn or its representatives about their Zurn Pex plumbing system and were denied or partially denied warranty coverage for failure of the Zurn Pex plumbing system based on a claim that "corrosion" was not covered by the warranty or that other alleged warranty limitations applied.

36.     Plaintiffs specifically exclude Zurn or its related entities from the putative class, all subsidiaries or affiliates of Zurn; any entity in which Zurn has a controlling interest; and any and all of Zurn's employees, affiliates, legal representatives, heirs, successors or assignees.

37.     Plaintiffs also specifically exclude from the putative class any person or entity that has previously commenced and concluded a lawsuit against Zurn arising out of the subject matter of this lawsuit.

38.     Plaintiffs also specifically exclude from the putative class the judge assigned to this case and any member of the judge's immediate family.

39.     Plaintiffs specifically include in the putative class the claims of all persons or entities, like insurance companies, that have paid for the repair, replacement and / or damage caused by prematurely failed Zurn brass insert fittings.

## FACTUAL BACKGROUND

**Zurn Pex Plumbing Background**

40.     Zurn is the manufacturer and seller of various plumbing products including Pex plumbing materials.

41.     Pex is an acronym for cross-linked polyethylene.  Polyethylene is the raw material and the "X" in the generic name "Pex"  refers to the cross-linking of the polyethylene across its molecular chains.

42.     For decades, plumbers and homeowners have used copper piping for potable water plumbing systems.

43.     Copper is and has been accepted by virtually all plumbing codes throughout the United States.

44.     In the 1990's, manufacturers  in the United States  began selling and plumbers began installing potable water plumbing systems with tubing made from polybutylene plastic.

45.     Zurn was a manufacturer, seller and distributor of plumbing systems using tubing made from polybutylene plastic.

46.     Plumbing systems using tubing made from polybutylene plastic were touted by manufacturers as being easier to install, cheaper and longer-lasting than copper plumbing systems.

47.     Polybutylene plumbing systems quickly proved to be poorly conceived, designed and manufactured systems.

48.     Those polybutylene systems began to fail prematurely in the field causing substantial property damage.

49.    A substantial amount of litigation ensued as a result of the widespread, premature failure of polybutylene plumbing systems.

50.    Several class actions were filed and settlements in those cases exceeded $1.25 billion dollars.

51.    Zurn's predecessor, U.S. Brass, filed bankruptcy because of its liability for failing polybutylene plumbing systems.

52.    At least in part in response to the failure of polybutylene plumbing systems, virtually all manufacturers ceased manufacturing polybutylene plumbing systems for sale in the United States.  In addition, most plumbing codes eventually prohibited the installation of polybutylene plumbing systems.

53.    In recent years, Zurn and other manufacturers developed alternative, non-copper plumbing products.

54.    Specifically, Zurn designed, manufactured and marketed a plumbing system using Pex tubing for use in residential and commercial settings.

55.    Zurn and other manufacturers of Pex plumbing products have touted Pex plumbing systems as being easier to install, cheaper and longer-lasting than copper plumbing systems.

56.    In recent years, more plumbing state and local plumbing codes have allowed for the installation of Pex plumbing products in addition to copper piping.

57.    Installation of Pex plumbing systems, however, remains prohibited in certain areas of the United States.

**Zurn Pex Brass Insert Fittings**

58.     Zurn's Pex plumbing system uses a crimp or stainless steel clamp connection design in which insert fittings made of brass alloy are inserted into the Pex tubing.  The brass fittings are secured by using a special tool that crimps copper rings or stainless steel clamps around the outside of the tubing, which in turn, creates a seal between the Pex tubing and the brass fittings.

59.     The crimp system design chosen by Zurn for its Pex plumbing systems places a great deal of stress on the brass insert fittings once the system is assembled as intended.

60.     The design, choice of material and manufacturing methods of the Zurn brass insert fittings also result in residual stress on the fittings following the manufacturing process but before the system is assembled in the field.

61.     Zurn was negligent in its design and manufacture of the brass insert fittings for a number of reasons, including Zurn's choice of high zinc content brass alloy as the material used for the fittings.

62.     Zurn knew or should have known that the brass alloy it chose for the brass insert fittings made the fittings susceptible to premature failure through various processes like dezincification and stress corrosion cracking.

63.     Zurn knew or should have known that its crimp fitting design, Pex system design, and choice of brass alloy also made the brass insert fittings susceptible to premature failure through stress corrosion cracking.

64.     Zurn knew or should have known that the manufacturing process used for the brass insert fittings left residual stress and machining imperfections that would cause premature failure.

65.    Zurn's design, materials choices, and manufacturing practices have created a product that is damaged and begins to fail on its first day of use, even if perfectly installed in its intended environment.

66.    Testing has also shown that Zurn's design, materials choices, and manufacturing practices have created a product that is damaged and cracked even before it is installed in its intended environment.

67.    Because of their defective design and manufacture, Zurn's brass insert fittings failed in their intended purpose.

68.    Because of their defective design and manufacture, Zurn's brass insert fittings are inherently defective and are substantially certain to fail within the 25 year express warranty provided by Zurn and / or the useful life of the fittings.

69.    Class members own Zurn Pex plumbing systems with brass insert fittings that have already or are in the process of failing prematurely and thus have suffered or are reasonably certain to suffer actual injury well in advance of the warranted and expected life of their plumbing systems.

**Inadequate Testing of Zurn Brass Insert Fittings**

70.    Zurn did not test the brass insert fittings in their anticipated environments before selling those fittings to the public.

71.    In an effort to save time and money, Zurn did not end use test the brass insert fittings in Pex plumbing systems and instead used various assumptions when choosing the design and materials for this system. Such a practice violates engineering and manufacturing standards and accepted practice.

72.    Zurn also conducted inadequate testing on its brass insert fittings and failed to test things that it knew or should have known would lead to premature failure of the brass fittings.

73.    Zurn also failed to investigate or test whether well-known and expected water conditions would lead to premature failure of the brass insert fittings and has admitted that it performed virtually no testing to determine how the fittings would perform when placed into potable water service.

**False Advertising of Zurn Pex plumbing systems**

74.    Zurn falsely advertised that the Pex plumbing system – including its brass insert fitting components -- was reliable despite never testing and determining the reliability of its product when used in real world conditions.

75.    Zurn holds itself out as a "proven leader in the plumbing industry" and as a manufacturer of reliable plumbing products.

76.    Zurn also advertises itself as being "the time tested and proven leader in the flexible plumbing industry."

77.    Among other false and inaccurate representations of its Pex plumbing systems with brass insert fittings, Zurn falsely advertised and represented that the system "resists mineral buildup, rust, corrosion, and electrolysis," had "No exotic parts to fail," and made "More positive connections, quicker, easier."

78.    Zurn also falsely represented its QestPEX Crimp System as "utilizes high quality brass fittings and copper crimp rings to provide a connection which is stronger than the pipe itself" and that "When properly installed, the QestPEX Crimp System is a worry free system!"

79.    Zurn also falsely represented that owners of its Pex plumbing systems "can rest assured that your new plumbing . . . system will provide a lifetime of reliable service."

80.    Zurn falsely advertises its brass fitting system as "the most time tested and reliable fitting system available."

81.    Zurn also falsely advertises that its brass insert fittings "are actually stronger than the pipe itself and once crimped, they cannot be pulled apart or blown out."

82.    Zurn also falsely advertises that its brass insert fittings and ease of installation will provide "perfect connections every time, giving you a plumbing system that will be worry free for a lifetime."

83.    Zurn also falsely marketed its Pex plumbing systems as being safe, reliable, and corrosion-resistant.

84.    Zurn also falsely marketed its Pex plumbing systems as being proven, time-tested and worry free.

85.    Zurn also falsely marketed and warranted its Pex plumbing systems as being extensively tested, and that based on the results of those tests, the Pex plumbing system and its brass insert fittings were properly designed, developed, marketed, and manufactured so as to perform adequately, reliably and as represented.

86.    Zurn also falsely marketed and warranted that its Pex plumbing systems were superior to copper plumbing systems.

87.    Zurn also falsely marketed and warranted that its Pex plumbing systems and the brass insert fittings were of superior design and materials than similar products made by competitors.

88.     Zurn and its authorized agents and distributors made each of the above described assertions, statements, representations and warranties with the intent and purpose of inducing plumbing suppliers, builders, plumbers, and consumers to purchase and install Zurn Pex plumbing systems and its brass insert fittings in their properties in Michigan and elsewhere.

89.     Zurn also made numerous material omissions and uniformly withheld important information relating to the design, reliability and performance of its brass insert fittings and Pex plumbing systems.

90.     Had Zurn not withheld and omitted important information about the design, reliability and performance of its brass insert fittings and Pex plumbing systems, Plaintiffs and the members of the putative class would not have purchased those products.

**Field Failures of Zurn Pex Plumbing systems**

91.     By 1999 at the latest, Zurn received notice from the field that its brass insert fittings were failing prematurely.

92.     Zurn brass insert fittings have failed prematurely in numerous locations throughout the United States, including Michigan.

93.     In some parts of the country, the number of Zurn brass insert fittings that have failed prematurely has caused Zurn to either stop selling the products completely in the state or to advise plumbers to use a different type of fitting.

94.     By July 1, 2005, Zurn had admitted that "the majority of fittings that are cracking are tees and elbows."

95.     By July 1, 2005, Zurn had admitted that "the majority of these fittings are cracking from inside the wall cavity of the fittings."

96.     As but one example of the high number of premature failures, one plumbing company alone had reported over 150 failures of Zurn brass insert fittings by the end of 2006. Because of the unacceptable rate of premature failure, that plumbing company stopped using Zurn's Pex plumbing systems and brass crimp fittings and switched to a competitor's product. The competitor's product has performed well without failure in the same installation area.

97.     In part because of the premature failures of its brass insert fittings, Zurn has issued a corporate directive to stop selling brass fittings and sell only its plastic fittings.

98.     In recognition of the problems with its choice of high zinc content brass, Zurn chose different metal alloys for use in its latest Pex plumbing fittings.

**Competitors' Use of Different Product Materials and Designs**

99.     Several of Zurn's competitors in the Pex plumbing market chose designs and materials that are much more resistant to the premature failure problems that have plagued the Zurn Pex brass insert fittings.

100.     For example, some of Zurn's competitors in the Pex plumbing market chose fitting and assembly designs that exert less stress on the fittings than the Zurn Pex brass insert fittings.

101.     Some of Zurn's competitors in the Pex plumbing market chose fitting materials like copper, bronze and plastic, which are less susceptible to premature failure than Zurn's brass insert fittings.

**Plaintiffs' Circumstances**

102.     Plaintiffs Paul F. Bohn and Bridget B. Bohn purchased a Zurn Pex plumbing system through Ferguson Enterprises and hired a licensed plumber to install the system in their home located in Hanburg, Michigan.

103.    Less than two years after installation, one of the Zurn brass insert fittings failed at the Bohn home causing water damage to property other than the Pex plumbing system.

104.    Later, another Zurn brass insert fitting failed at the Bohn home causing water damage to property other than the Pex plumbing system.  Other fittings have subsequently been found to be damaged and leaking.

105.    Because of the fear that another Zurn fitting would fail at any time and without any notice, Plaintiffs paid to have all Zurn fittings in their home removed and replaced. Plaintiffs have sustained substantial out of pocket expense to replace the defective Zurn fittings.

106.    Plaintiffs, like many class members, have already suffered out-of-pocket damage to repair their home following the premature failures of the Zurn Pex brass insert fittings. Likewise, all putative class members have incurred or are reasonably certain to incur, the cost of repairing their homes because of fittings failures and / or prematurely replacing their plumbing systems.

107.    Plaintiffs and the proposed class members suffered general and specific compensatory and contractual damages including, without limitation consequential, incidental, loss of use, diminution of value, attorneys' fees, costs and disbursements.

**Zurn's Warranty Misconduct**

108.    Plaintiffs Paul F. Bohn and Bridget B. Bohn presented a warranty claim to Zurn for the damage caused by the premature failure of the brass insert fittings.

109.    Through its representatives, Zurn has denied the warranty claim and alleged that the failure of the Zurn brass insert fittings at the Bohn home was not covered by Zurn's 25-year warranty.

110.    Zurn denied the Bohn warranty claim because of alleged limitations and disclaimers Zurn contended were part of its warranty.

111.    Zurn rejected the Bohn warranty claim on the purported basis that the premature failure of the Zurn Pex brass insert fittings was caused by "aggressive" or "corrosive" water.

112.    Pursuant to uniform company policy, Zurn provided false, deceptive, misleading and fraudulent information to consumers with failed Zurn Pex plumbing systems by advising them that the Zurn warranty was subject to vague and ambiguous limitations about "corrosive water conditions."

113.    To this day, Zurn cannot define what the phrase "corrosive water conditions" means and yet uniformly concludes that failures of its brass insert fittings are caused by water conditions that it cannot define.

114.    In response to the claims of its customers, Zurn has adopted a uniform company policy not to pay customers their full measure of damages.

115.    Zurn's attorneys and corporate executives were aware of this misconduct and condoned the misconduct because the flood of warranty claims Zurn has received were not included in Zurn's "cost structure" for these systems.

116.    Beginning in at least 1999, Zurn became aware through various claims and reports that the brass insert fittings that it was manufacturing, distributing and advertising were subject to premature failures, problems and deterioration.

117.    Despite the fact that Zurn knew its product was defective and that its system would not perform as advertised, warranted or otherwise expressly represented, Zurn continued to sell the product to the public without correction and, in fact, concealed from the public the fact

that its Pex system and brass insert fittings were defective, not durable and would begin to fail immediately upon being placed into service.

118.    Because the Zurn Pex plumbing system related to the habitability of persons' homes, Zurn had a duty to the consumer and to the public to disclose the defective nature of its system and not to conceal and suppress the defective nature of the product from Plaintiffs and the putative class members.

119.    Zurn, however, has engaged in a scheme to cover up the true nature of the problem with its brass insert fittings and plumbing systems.

120.    Consistent with the usage in the plumbing trade, Zurn originally covered and paid warranty claims for the premature failures of its brass insert fittings but, after realizing the magnitude of the problem, began denying the warranty claims blaming the premature failures on "aggressive" or "corrosive" water.

121.    Zurn knew the cause of the premature failures was not "aggressive" or "corrosive" water and has fraudulently concealed and suppressed from Plaintiffs and the putative class the true nature of the problems with the Zurn plumbing and brass insert fitting system.

122.    To this day, Zurn continues in this pattern of concealment and suppression by deliberately and knowingly misrepresenting to the public the true nature of the problems with the brass insert fittings.  In fact, many members of the putative class are still unaware that their plumbing system is prematurely failing and will continue to fail due to its design and manufacturing defects.

## SATISFACTION OF CLASS PREREQUISITES

123.    This class action satisfies numerosity, commonality, typicality, adequacy and superiority requirements for maintaining a class.

124.   **Numerosity.**  Pursuant to Rule 23(a)(1) of the Federal Rules of Civil Procedure, the putative class "is so numerous that joinder of all members is impracticable."  The number of members of the putative class is believed to be tens of thousands of individuals and/or entities that own properties with Zurn Pex plumbing systems with brass insert fittings.

125.   In the State of Michigan alone, Zurn has reportedly sold more than 3.9 million brass insert fittings since 2000.  Joinder of the persons and entities into whose properties the Zurn Pex plumbing systems were installed is impractical and not feasible.

126.   **Commonality.**  Pursuant to Rule 23(a)(2) of the Federal Rules of Civil Procedure, the putative class shares "questions of law or fact" that predominate and individualized issues.  The common questions include, but are not limited to, the following:

- Were Zurn's brass insert fittings defectively designed for their intended application?

- If so, what is the nature of the design defect?

- Were Zurn's brass insert fittings defectively manufactured?

- Did Zurn fail to warn consumers that the brass insert fittings were not properly tested during design and development process?

- Did Zurn adequately warn consumers about any types of installations that may cause premature failure of the brass insert fittings?

- Did Zurn make fraudulent, false, deceptive and/or misleading statements in connection with the sale of Zurn Pex plumbing systems in its product literature, including those relating to standards and reliability?

- Did Zurn omit material information when it sold its Pex plumbing systems and brass insert fittings?

- Did Zurn properly account for foreseeable variations in installation in the development and design of the Zurn Pex plumbing system and brass insert fittings?

- Did Zurn exercise reasonable care in the design, manufacture and testing of the Zurn Pex plumbing system and brass insert fittings?

- Are the brass insert fittings progressively deteriorating at an accelerated rate?

- Will the brass insert fittings fail prematurely?

- Did Zurn deliberately sell or allow brass insert fittings to be distributed after it knew the fittings were failing at an increased rate?

- Did Zurn engage in fraudulent, false, deceptive and/or misleading misconduct with respect to the handling of warranty claims?

- What categories of damages are recoverable for owners of structures with Zurn Pex plumbing systems and brass insert fittings, e.g., replacement, consequential, incidental or other damages?

- Are the Plaintiffs entitled to relief under Zurn's express warranty?

- Can the class obtain a declaration concerning the types and categories of damages and remedies available to putative class members?

- Should Zurn be enjoined from denying warranty claims based on alleged warranty disclaimers or limitations?

- Are Plaintiffs' claims barred in whole or in part by any of Zurn's affirmative defenses?

127.    **Typicality.**  Pursuant to Rule 23(a)(3) of the Federal Rules of Civil Procedure, the claims of the putative class representatives, Plaintiffs, "are typical of the claims … of the class."  Plaintiffs and all members of the putative class who own Zurn's defective Pex plumbing systems with brass insert fittings have suffered damages as a result of Zurn's wrongful acts and misconduct.  Pursuant to corporate directives, Zurn engaged in a similar pattern of misconduct towards both the Plaintiffs and all the other putative class members.

128.    **Adequacy**.  Pursuant to Rule 23(a)(4) of the Federal Rules of Civil Procedure, the putative class representatives "will fairly and adequately protect the interests of the class." Plaintiffs have no adverse interests to the putative class members.  Plaintiffs were sold a plumbing system with defective brass insert fittings.  Plaintiffs have retained lawyers who have substantial resources, experience and success in the prosecution and defense of class action,

mass tort and complex litigation, and the insurance coverage and settlement issues attendant to the same.

129.    **Superiority.**    Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, a class action is a superior method of resolving this action for the following reasons:  A class action in this instance conserves the resources of the putative class, Zurn and the Court.  The damages of most putative class members are not, in isolation, significant enough to hire an attorney on a contingency basis, and the burden and expense of hiring an attorney on a per diem basis for Plaintiffs and most putative class members, makes it difficult if not impossible for the class members to seek redress.  On information and belief, no Attorney General of any state has brought an enforcement action against Zurn to remedy the claims asserted herein.

Because the nature of the claims involved, the class members need swift and uniform resolution of their claims before additional damage is caused by failures.  Zurn has been uniformly refusing to pay Plaintiffs and the putative class members their full damages.

Further, there may or will be other cases pending against Zurn.  Serial adjudications in numerous venues is not efficient, timely, or proper.  Judicial resources throughout Michigan and the United States will be unnecessarily depleted by resolution of individual claims.  Joinder on an individual basis of thousands of claimants in any one suit would be impractical or impossible.  Individualized judgments and rulings could result in inconsistent relief for similarly situated plaintiffs.  Individualized lawsuits could also establish incompatible standards of conduct for Zurn in creating, marketing, sale and post-sale conduct in connection with Zurn's Pex plumbing systems and brass insert fittings.

## COUNT I

### (NEGLIGENCE)

130.    Plaintiffs and the putative class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

131.    Zurn was negligent in that it failed to use reasonable care when it created, marketed and sold its Pex plumbing system with brass insert fittings.

132.    As the manufacturer of consumer products, Zurn owed a duty to Plaintiffs and the putative class members to provide a safe and quality product, and a duty to provide a product that would perform as it was advertised.  Zurn breached those duties.

133.    That as a direct and proximate result of Zurn's negligence, lack of care, and other wrongful acts, Plaintiffs and the putative class members sustained and will sustain damages.

134.    As a result of Zurn's negligence, Plaintiffs and the putative class have suffered actual damages in that they have purchased and installed in their homes and structures a plumbing system that is defective and is damaged upon its initial use.

135.    As a result of Zurn's negligence, Plaintiffs and the putative class will suffer damages that include not only the full cost to replace brass insert fittings and plumbing systems, but also include, without limitation, consequential and incidental damages.

136.    That as a direct, proximate and foreseeable result of Zurn's negligence, Plaintiffs and the putative class members have been damaged, in the aggregate, in an amount to be determined at trial.

137.    Plaintiffs therefore request that this Court enter judgment in their favor against Zurn in an amount sufficient to compensate Plaintiffs for all damages arising from Zurn's

negligence, including incidental and consequential damages, interest, costs, attorney fees and such other and further relief as the Court deems appropriate.

<u>COUNT II</u>

**(BREACH OF EXPRESS WARRANTIES) (MCL 440.2313)**

138.    Plaintiffs and the putative class members re-allege the foregoing paragraphs, inclusive, as though fully set forth herein.

139.    Zurn made certain express warranties to distributors, plumbers and consumers about the goods it would provide.

140.    The express warranties provided by Zurn included warranties that Zurn would provide properly designed and manufactured plumbing systems and a 25-year warranty on such systems.  Zurn also made numerous other express warranties as previously set forth in this Complaint.

141.    Plumbing distributors, plumbers, Plaintiffs and the putative class members relied upon Zurn's express warranties.

142.    Zurn breached such express warranties by providing defective plumbing systems that have or are reasonably certain to fail well before the 25 year warranty or useful life of the system.  Zurn also breached its warranties to Plaintiffs and the putative class by refusing to honor its express warranties when presented with claims and damage covered by the terms of the warranty.

143.    Zurn also breached such express warranties by attempting to avoid paying warranty claims by invoking provisions of the warranties it knew were vague, ambiguous and unenforceable.  Among those vague, ambiguous and unenforceable provisions is the term "corrosive water conditions" that Zurn itself, to this day, cannot define.

144.    As a result of Zurn's breach of warranties, Plaintiffs and the putative class have suffered actual damages in that they have purchased and installed in their homes and structures a plumbing system that is defective and is damaged upon its initial use.

145.    As a result of Zurn's breach of warranties, Plaintiffs and the putative class will suffer damages that include not only the full cost to replace brass insert fittings and plumbing systems, but also include, without limitation, consequential and incidental damages.

146.    That as a direct, proximate and foreseeable result of Zurn's breach of warranties, Plaintiffs and the putative class members have been damaged, in the aggregate, in an amount to be determined at trial.

147.    Plaintiffs therefore request that this Court enter judgment in their favor against Zurn in an amount sufficient to compensate Plaintiffs for all damages arising from the breaches of warranty, including incidental and consequential damages, interest, costs, attorney fees and such other and further relief as the Court deems appropriate.

## COUNT III

## (BREACH OF WARRANTY FOR CONTRACT GOODS) (MCL 440.2314)

148.    Plaintiffs and the putative class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

149.    The Pex plumbing system sold by Zurn to Plaintiffs was subject to an implied warranty of merchantability.

150.    The Pex plumbing system Zurn provided to Plaintiffs does not pass in the trade under the description set forth in the sales contract and literature.

151.    The Pex plumbing system was and is not of fair average quality within the description set forth in the sales contract and literature or in the other materials and information provided by Zurn to Plaintiffs and their representatives.

152.    The Pex plumbing system sold by Zurn to Plaintiffs was and is not fit for the ordinary purposes for which it was and is used.

153.    The Pex plumbing system did and does not conform to the promises and affirmations of fact set forth in the sales contract and in the other materials and information provided by Zurn to Plaintiffs and their representatives.

154.    As a result of Zurn's breach of implied warranties, Plaintiffs and the putative class have suffered actual damages in that they have purchased and installed in their homes and structures a plumbing system that is defective and is damaged upon its initial use.

155.    As a result of Zurn's breach of implied warranties, Plaintiffs and the putative class will suffer damages that include not only the full cost to replace brass insert fittings and plumbing systems, but also include, without limitation, consequential and incidental damages.

156.    That as a direct, proximate and foreseeable result of Zurn's breach of implied warranties, Plaintiffs and the putative class members have been damaged, in the aggregate, in an amount to be determined at trial.

157.    Plaintiffs therefore request that this Court enter judgment in their favor against Zurn in an amount sufficient to compensate Plaintiffs for all damages arising from the breaches of implied warranty, including incidental and consequential damages, interest, costs, attorney fees and such other and further relief as the Court deems appropriate.

## COUNT IV

### (BREACH OF WARRANTY OF FITNESS FOR PARTICULAR PURPOSE)
### (MCL 440.2315)

158.    Plaintiffs and the putative class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

159.    The Pex plumbing system sold by Zurn to Plaintiffs was subject to an implied warranty of fitness for a particular purpose.

160.    Zurn was a merchant with respect to goods of the kind of the Pex plumbing system. Zurn knew and had reason to know of the particular purpose for which the Pex plumbing system was required and that Plaintiffs and their representatives relied on Zurn's skill and judgment to select and furnish suitable goods.

161.    The Pex plumbing system was and is not fit for the particular purpose for which it was and is required by Plaintiffs and members of the putative class.

162.    As a foreseeable, direct and/or proximate result of Zurn's breaches of the warranty of fitness for a particular purpose, Plaintiffs have incurred and continue to incur damages, including but not limited to the damage caused by the leaking fittings and the cost to replace all Zurn brass insert fittings in their home.

163.    Plaintiffs therefore request that this Court enter judgment in their favor against Zurn in an amount sufficient to compensate Plaintiffs for all damages arising from the breaches of warranty, including incidental and consequential damages, interest, costs, attorney fees and such other and further relief as the Court deems appropriate.

## COUNT V

### (INTENTIONAL, NEGLIGENT, AND INNOCENT
### MISREPRESENTATION AND BAD FAITH PROMISE)

164.    Plaintiffs and the putative class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

165.    To induce Plaintiffs to forego other opportunities to purchase a different plumbing system, to enter into the purchase agreement, to make payment to Zurn through their suppliers, and to take other actions in connection with this transaction, Zurn and its representatives made various affirmative misrepresentations of material facts, including but not limited to the representations that:

      a.    Zurn was willing and able to deliver a dependable plumbing system that would comply with their representations described herein;

      b.    Zurn had tested the Pex plumbing system and its brass insert fittings to determine that they were safe and fit for their intended use;

      c.    Pex plumbing systems were superior to copper systems;

      d.    Brass fittings offered more resistance to corrosion or degradation than copper plumbing components;

      e.    Zurn had a factual and engineering basis for the statements it made in the course of selling its Pex plumbing systems; and

      f.    Zurn had implemented manufacturing and quality control practices sufficient to deliver brass fittings that would not prematurely degrade when used in potable water systems.

166.    Zurn knew that its affirmative misrepresentations were false when they were made, or they made the misrepresentations with reckless disregard as to their truth or falsity.

167.    Each of the foregoing misrepresentations was made with the intent that Plaintiffs and their representatives rely on it in agreeing to and performing acts including the purchase of a

Zurn pex plumbing system, making payment for that system, and foregoing opportunities to obtain a plumbing system from someone other than Zurn.

168.    Plaintiffs and their representatives reasonably relied on each of the foregoing representations to its detriment in agreeing to and performing the acts described above.

169.    As a foreseeable, direct and/or proximate result of Zurn's misrepresentations, Plaintiffs have incurred and continue to incur damages, including but not limited to the damage caused by the leaking fittings and the cost to replace all Zurn brass insert fittings in their home.

170.    Plaintiffs therefore request that this Court enter judgment in their favor against Zurn in an amount sufficient to compensate Plaintiffs for all damages arising from the misrepresentations, including incidental and consequential damages, interest, costs, attorney fees and such other and further relief as the Court deems appropriate.

**COUNT VI**

**(NONDISCLOSURE)**

171.    Plaintiffs and the putative class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

172.    To induce Plaintiffs to forego other opportunities to purchase a different plumbing system, to enter into the purchase agreement, to make payment to Zurn through its suppliers, and to take other actions in connection with this transaction, Zurn made various numerous omissions of material facts, including but not limited to:

      a.    Failure to reveal that Zurn had never tested its brass pex insert fittings in their intended environment;

      b.    Failure to disclose that Zurn's choice of high zinc content yellow brass for its pex insert fittings assured that the fittings would fail prematurely;

    c.    Failure to disclose that Zurn did not actually manufacture the brass pex insert fittings and had not directed foreign manufacturers to use acceptable manufacturing practices to avoid premature failures of the fittings;

    d.    Failure to disclose that Zurn had never previously tested whether its Pex plumbing systems with brass insert fittings were actually superior to copper plumbing systems as Zurn and its representatives advertised;

    e.    Failure to disclose that Zurn could not describe the water conditions in which its brass insert fittings would or would not perform well; and

    f.    Failure to disclose that Zurn did not have a factual and engineering basis for the statements it made in the course of selling its Pex plumbing systems; and

    g.    Zurn had not implemented manufacturing and quality control practices sufficient to deliver brass fittings that would not prematurely degrade when used in potable water systems.

173.    Zurn's failure to disclose material facts caused Plaintiffs and their representative to have false impressions.

174.    Zurn had actual knowledge of the material facts it failed to disclose to Plaintiffs and their representatives.

175.    When Zurn failed to disclose material facts including those enumerated above, it knew that the nondisclosures would create false impressions.

176.    When they made their material omissions, Defendants did so with the intent that Plaintiffs and their representatives would rely on the resulting false impressions.

177.    Each of the foregoing omissions and nondisclosures was made with the intent that Plaintiffs and their representatives rely on it in agreeing to and performing acts including the purchase of a Zurn pex plumbing system, making payment for that system, and foregoing opportunities to obtain a plumbing system from someone other than Zurn.

178.    Plaintiffs and their representatives reasonably relied on the false impressions created by Zurn's material omissions.

179.    As a foreseeable, direct and/or proximate result of Zurn's omissions and nondisclosures, Plaintiffs have incurred and continue to incur damages, including but not limited to the damage caused by the leaking fittings and the cost to replace all Zurn brass insert fittings in their home.

180.    Plaintiffs therefore request that this Court enter judgment in their favor against Zurn in an amount sufficient to compensate Plaintiffs for all damages arising from the omissions and nondisclosure, including incidental and consequential damages, interest, costs, attorney fees and such other and further relief as the Court deems appropriate.

## COUNT VII

## (NEGLIGENT FAILURE TO WARN)

181.    Plaintiffs and the putative class members re-allege the foregoing paragraphs, inclusive, as though fully set forth herein.

182.    As the manufacturer of a product, Zurn had a duty to provide instructions for proper use of its products.

183.    As the manufacturer of a product, Zurn had a duty to warn of foreseeable dangers inherent in the proper use of its products and also had a duty to warn of dangers associated with foreseeable misuse of its products.

184.    That to the extent Zurn claims in this lawsuit that the premature failures of its plumbing systems and brass insert fittings was the result of characteristics of the water chemistry present in Plaintiffs' or the members of the putative class's water supply, Zurn failed to warn of those characteristics or dangers.  As the manufacturer of consumer products, Zurn had a duty to provide such information.

185.    That to the extent Zurn claims in this lawsuit that the premature failures of its plumbing systems and brass insert fittings was the result of characteristics of the water chemistry present in Plaintiffs' or the members of the putative class's water supply, Zurn failed to provide Plaintiffs and members of the putative class with any instructions, information or warnings about the types of water conditions likely to cause premature failures.   As the manufacturer of consumer products, Zurn had a duty to provide such information.

186.    That as a direct, proximate and foreseeable result of Zurn's failure to warn, Plaintiffs and the proposed members of the class suffered damage.

187.    As a result of Zurn's failure to warn, Plaintiffs and the putative class have suffered actual damages in that they have purchased and installed in homes and structures a plumbing system that is defective and that has caused damage to property other than the system itself and that is damaged upon its initial use.

188.    As a result of Zurn's failure to warn, Plaintiffs and the putative class will suffer damages that include not only the full cost to replace their plumbing systems and brass insert fittings, but also include, without limitation, consequential and incidental damages.

189.    That as a direct, proximate and foreseeable result of Zurn's failure to warn, Plaintiffs and the putative class members have been damaged, in the aggregate, in an amount to be determined at trial.

190.    Plaintiffs therefore request that this Court enter judgment in their favor against Zurn in an amount sufficient to compensate Plaintiffs for all damages arising from the failure to warn, including incidental and consequential damages, interest, costs, attorney fees and such other and further relief as the Court deems appropriate.

## COUNT VIII

### (DECLARATORY AND INJUNCTIVE RELIEF)

191.    Plaintiffs and the putative class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

192.    Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure and any applicable statute or rule providing for declaratory and / or injunctive relief, Plaintiffs and the putative class members seek a declaratory judgment as follows:

    a.    To the extent Zurn alleges that any pretend limitations, restrictions or disclaimers of express warranty preclude full recovery of damages, the warranties fail of their essential purpose because the remaining remedies provided therein are inadequate and deprive the class of the benefit of the bargain of their purchases, because Zurn at the time of sale and thereafter concealed and suppressed that the system was defective, and because the provisions are otherwise unconscionable;

    b.    To the extent Zurn alleges that any pretend limitations, restrictions or disclaimers of express warranty preclude full recovery of damages, the same is unconscionable because the warranties do not provide adequate remedies because the defect in the plumbing system is latent and because the Plaintiffs lack sufficient bargaining power;

    c.    To the extent Zurn alleges that any pretend limitations, restrictions or disclaimers of implied warranty preclude full recovery of damages, the same is unlawful and unenforceable;

    d.    To the extent Zurn alleges that any pretend limitations, restrictions or disclaimers of implied warranty preclude full recovery of damages, the same is barred by Zurn's failure to provide the alleged warranty disclaimers at the time of sale of the product;

    e.    Any releases obtained by Zurn, that did not otherwise provide full compensation to the putative class, were fraudulently induced, are unconscionable, were obtained by suppression and concealment, were obtained under duress by persons needing to repair their plumbing systems, and are null and void; and

    f.    To the extent Zurn has had an adverse adjudication against it arising from the subject matter of this Complaint, that the putative class may use

offensive collateral estoppel against Zurn for the rulings and determinations therein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray

for relief against Zurn as follows:

1.     Certification of this matter as a class action and appointing Plaintiffs and their counsel to represent the class;

2.     Compensation for damages suffered by Plaintiffs and the putative class members;

3.     Award of punitive damages;

4.     Award of reasonable attorneys' fees and costs and disbursements incurred herein;

5.     Enjoin Zurn from denying Pex warranty claims for failed brass insert fittings;

5.     Declaring the rights and obligations of the parties as prayed for; and

6.     Such other and further relief the Court deems just and equitable.


Respectfully Submitted,

**McAlpine & Associates, P.C.**

**/s/ Mark L. McAlpine**
Mark L. McAlpine (P35583)
*Attorney of Record*
Marcus R. Sanborn (P69565)
3201 University Drive, Suite 100
Auburn Hills, MI 48326
Phone: (248) 373-3700
Fax: (248) 373-3708
mlmcapline@mcalpinelawfirm.com

**LARSON · KING, LLP**
Shawn M. Raiter
T. Joseph Snodgrass
2800 Wells Fargo Place
30 East 7th Street
St. Paul, MN 55101
Telephone:(651)312-6500
sraiter@larsonking.com

*Attorneys for Plaintiffs and
the Putative Class*

Dated:  September 4, 2009

### JURY DEMAND

Plaintiffs, Paul F. Bohn and Bridget B. Bohn, hereby demand a jury trial for all issues in this litigation which are properly submitted to a jury.

**McAlpine & Associates, P.C.**

**/s/ Mark L. McAlpine**
Mark L. McAlpine (P35583)
*Attorney of Record*
Marcus R. Sanborn (69565)
3201 University Drive, Suite 100
Auburn Hills, MI 48326
Phone: (248) 373-3700
Fax: (248) 373-3708
mlmcapline@mcalpinelawfirm.com

**LARSON · KING, LLP**
Shawn M. Raiter (240424)
T. Joseph Snodgrass (231071)
2800 Wells Fargo Place
30 East 7th Street
St. Paul, MN 55101
Telephone:(651)312-6500

*Attorneys for Plaintiffs and
the Putative Class*

Dated:  September 4, 2009